The STATE of Texas, Appellant,

v.

Wanda A. HOLLOWAY, Appellee.

No. 01–91–01296–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 13, 1994.

Rehearing Overruled Nov. 17, 1994.

---

**2.** Medical Liability & Insurance Improvement Act, 65th Leg., Ch. 817, §§ 8.01–8.05, 1977 Tex. Gen.Laws 2050–51.

J. Harvey Hudson, Houston, for appellant.

W. Troy McKinney, Houston, for appellee.

Before DUGGAN, O'CONNOR and HEDGES, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal by the State from the trial court's order granting defendant-appellee Wanda A. Holloway's motion for new trial. TEX.CODE CRIM.PROC.ANN. art. 44.01(a)(3) (Vernon Supp.1994). A jury found Holloway guilty of solicitation of capital murder and assessed her punishment at 15–years confinement and a $10,000 fine. Following a hearing wherein the parties offered evidence by affidavit, TEX.R.APP.P. 31(d), the trial court granted Holloway's motion for new trial. At the State's request, and over Holloway's objection, the trial court filed findings of fact and conclusions of law concerning its ruling. In two points of error, the State asserts the trial court erred in granting a new trial because Holloway's complaint pertaining to a disqualified juror was both untimely and waived. We affirm.

The undisputed evidence adduced at the motion for new trial showed that at the time of trial one of the jurors, Daniel Michael Enriquez, was on deferred adjudication in the 178th District Court of Harris County for the felony offense of possession of cocaine. The deferring of guilt is deemed a "pending" case against a defendant, and Enriquez was therefore "under indictment" for a felony offense. *Thomas v. State,* 796 S.W.2d 196, 198 n. 1 (Tex.Crim.App.1990) (citing *Brown v. State,* 716 S.W.2d 939, 949 (Tex.Crim.App.1986); *Walker v. State,* 645 S.W.2d 294, 295 (Tex.Crim.App.1983)). As such, he was statutorily disqualified for jury service under TEX.CODE CRIM.PROC.ANN. arts. 35.16(a)(3), 35.19 (Vernon 1989).

The trial court granted Holloway's motion for new trial on the grounds that Enriquez was illegally impaneled; that under *Thomas v. State,* the illegality in the impaneling could not "be consented to, acquiesced to or waived," and that under article 35.19, Enriquez was "absolutely disqualified, giving us a void conviction in this case." The trial court further stated that it found no merit to any of Holloway's contentions other than the issue of the impaneling of juror Enriquez.

In its findings of fact and conclusions of law, the trial court found, *inter alia,* that Holloway's attorneys were "aware [of] or suspected" Enriquez's disqualification, but did not alert the trial court, and instead remained silent during voir dire and trial and permitted Enriquez to be impaneled on the jury. Nevertheless, the trial court found as a conclusion of law that Enriquez was absolutely disqualified to serve as a juror under article 35.19; that the conviction was void and the trial was a nullity; and that Holloway's motion for new trial must be granted. Lastly, the trial court concluded that "if the defect could have been waived, then defense counsel certainly waived the same by their inaction." Holloway's attorneys emphatically denied by their affidavits and argument at the motion for new trial hearing, and they

continue to deny on appeal, that they knew of the juror's disqualification during voir dire or trial.

In its first point of error, the State asserts the trial court erred in granting a new trial because Holloway's complaint pertaining to a disqualified juror was untimely.

The State contends, in the face of case law to the contrary, that a claim of juror disqualification under articles 35.16(a) and 35.19 ought not to be urged for the first time in a motion for new trial, and that appellate courts "should adhere to the plain meaning of the statute as logically derived from the words of the literal text."

Article 35.16(a) states, in pertinent part:

(a) A challenge for cause is an objection made to a particular juror, alleging some fact which renders him incapable or unfit to serve on the jury. A challenge for cause may be made by either the state or the defense for any one of the following reasons: ...

3. That he is under indictment or other legal accusation for theft or any felony; ...

No juror shall be impaneled *when it appears* that he is subject to the second, third or fourth grounds of challenge for cause set forth above, although both parties may consent. All other grounds for challenge may be waived by the party or parties in whose favor such grounds of challenge exist.

(Emphasis added.) In addition, article 35.19 provides that "[n]o juror shall be impaneled *when it appears* that he is subject to the second, third or fourth cause of challenge in Article 35.16, though both parties may consent." (Emphasis added.)

The State reasons, consistent with the literal texts of both statutes, that the only logical meaning of the phrase "when it appears" is that the disqualification must be brought to light or "appear" during voir dire in order to be a bar to impanelment. The statutes state that "when it appears" a juror is disqualified, then (1) that juror shall not be impaneled, (2) even if both parties consent. The State argues that because the only time the parties could consent to the impanelment

of a disqualified juror is during voir dire, the clear wording imposes upon the judge the statutory duty and authority to dismiss the venire member before he is impaneled, even if the prosecution and defense consent to waive the disqualification.

 Our disposition of this point is governed by a line of authorities culminating with the 1990 Texas Court of Criminal Appeals decision in *Thomas v. State. Thomas* held that a person disqualified for jury service under article 35.16(a)(2), (3), or (4)—*i.e.,* a person under indictment or other legal accusation for theft or any felony—is "absolutely disqualified." 796 S.W.2d at 197. The *Thomas* court stated:

If upon motion for new trial, it be shown that one or more of the jurors impaneled was disqualified ..., a new trial shall be ordered, without regard to a showing of injury or probable injury or of consent or waiver.

796 S.W.2d at 197–98 (quoting *Ex Parte Bronson,* 254 S.W.2d 117, 121 (Tex.Crim. App.1953)).

The State correctly observes that *Thomas's* quoted language from *Ex parte Bronson* was dicta in *Bronson.* The fact that an unpardoned convict served on the jury in *Bronson* was not presented by motion for new trial, and "was not known to the court or counsel or to appellant until after the appeal had been perfected." 254 S.W.2d at 118. Whether its origin in *Bronson* is dicta or illustrative language, the quoted language was central to the decision in *Thomas.*

The granting of a new trial in *Thomas* was more harsh toward the State than in our case. In *Thomas,* a death penalty case, the disqualified juror gave false answers during voir dire, both affirmatively on the written juror information form and by silence when asked to indicate whether she had "ever been charged, arrested, indicted or convicted of any criminal offense." 796 S.W.2d at 197.

By contrast, the disqualified juror in our case truthfully answered in voir dire on the written juror information form that he *had* been granted deferred adjudication proba-

tion,[1] and that he either had done or was presently doing volunteer work[2] as a result of his probation. Nevertheless, no one pursued the information Mr. Enriquez truthfully furnished and determined whether his deferred adjudication was active or discharged.

As the State acknowledges, this Court has no authority to overrule either *Bronson* or *Thomas* and the established rule. We hold that Holloway was not untimely in complaining of the absolutely disqualified juror for the first time upon motion for new trial. We overrule the State's first point of error.

By its second point of error, the State asserts the trial court erred in granting Holloway's motion for new trial because she waived the complaint. The State urges that Holloway's attorneys knew of juror Enriquez's disqualification during voir dire; that they consciously chose to ignore it and to proceed to trial with the disqualified juror; and that Holloway should therefore be estopped from now asserting the disqualification as a basis for reversal.

By its discussion of waiver, the *Thomas* court implied that there can be waiver of a juror's disqualification in circumstances approximating those the State alleges have occurred here. In *Thomas,* the Court stated that it was "reluctant to hold that the defense waived error on appeal" as to the juror's disqualification because "there is no indication in the record before us that the defense knew of the juror's [disqualification] until the time of the motion for new trial." 796 S.W.2d at 198–99. This statement suggests that in some circumstance *the error can be waived if the defense does know of the disqualification at an earlier time.* In a footnote, the *Thomas* opinion observed that while the State urged at the motion for new trial hearing that the defense was guilty of "laying behind the log," the trial court "made no such finding at the hearing and the State does not repeat this argument on appeal."

*Id.* n. 2. In our case, the State's complaint of waiver or estoppel addresses each of the factors that caused the *Thomas* court to express reluctance. In contrast with the State's position in *Thomas,* the State in our case (1) urged at the motion for new trial hearing that the defense knew of the juror's disqualification during voir dire, (2) continues to assert the argument on appeal, and (3) brings forward a record, including trial court findings and conclusions, that it contends supports its position.

█ The State asserts three reasons for its conclusion that defense counsel knew of Enriquez's disqualification during jury panel voir dire. We will first consider the third reason, the only one involving testimony by persons not participating in the trial. Based on the affidavits of two persons, a court coordinator and an assistant district attorney, the State asserts in its brief that each of these affiants testified they heard defense attorney Stanley Schneider state in a post-trial conversation that "he was aware of the fact that one of the jurors was on probation."

A close examination of the record shows that the "juror" discussed was not Enriquez. Court Coordinator Elaine Stolte testified that in a conversation with Schneider in her office after the trial, with Assistant District Attorney Luci Davidson present, the question arose as to "why the juror was left on the jury when he was on probation. Stan [Schneider] replied to all of us in the room 'I knew he was on probation, [Prosecutor] Mike [Anderson] knew he was on probation *and we even had a bench conference about it.*'" (Emphasis added). Davidson testified in the relevant part of her affidavit concerning the same conversation that "it became apparent to me from [Schneider] that all four (4) lawyers [the two prosecutors and two defense attorneys] were aware of the fact that the juror had been on probation *and that they had a bench conference with this juror* and

---

1. Juror information questionnaire question 20 and Enriquez's answer were as follows:
 "Have you or any close friend or relative ever been involved in a criminal case, either as a victim, defendant, witness, or attended court for any reason? Yes If yes, please explain
 1988 Possession of a Controlled Substance
 ———————————————————
 Deferred Adjudication ."

2. Question 30 and Enriquez's answer were as follows:
 "Do you do any type of volunteer work? Yes If yes, what kind? ———
 Community service—condition of probation."

both sides agreed to take him even though he was on deferred adjudication." (Emphasis added.)

Schneider stated in his affidavit, concerning his conversation with Stolte and Davidson, that:

I remember someone asking about whether we selected an alternate [juror] for this trial and I remember laughing and describing the problems that the alternate had as a juror in that he had been convicted of a Class C theft and thereby was also disqualified from sitting on any jury. The scenario described in Ms. Davidson's affidavit is reflected at page 52 of the statement of facts and involves the alternate selected in this case and not juror, [sic] David Enriquez.

Our own examination of the record—the statement of facts of the voir dire examination of all venire members, and the affidavits of Stolte, Davidson, and Schneider—shows that the *only* bench conference concerning a juror's possible disqualification based on prior criminal conviction dealt not with Enriquez but with venire member number 50, Robert Laskowski. Laskowski was selected as the alternate juror, even though he stated in voir dire that he had been convicted of a class C misdemeanor theft. A person convicted of any grade of theft is disqualified from jury service. TEX.CODE CRIM.PROC.ANN. art. 35.16(a)(2). The statement of facts indicates uncertainty by court and counsel during voir dire as to whether the misdemeanor nature of the venireman's prior theft conviction disqualified him. The trial court deferred a ruling, the matter was not further urged, and Laskowski was selected as the alternate juror; however, he did not take part in the jury's deliberations.

The affidavits of Stolte, Davidson, and Schneider are consistent with the statement of facts on jury voir dire. All show that the disqualified "juror" whom Schneider spoke about was not Enriquez but Laskowski, the only venire member who was the subject of a bench conference about a misdemeanor theft conviction.

The State's two remaining reasons are as follows. First, the State observes, Holloway's attorneys did not question Enriquez, a fact that would not have been "noteworthy" except that Enriquez appeared to be an ideal "State's juror." Enriquez indicated on his jury questionnaire that: (1) he had been the victim of a theft which required the filing of a police report; (2) he favored the use of undercover officers and informants to investigate criminal activity; (3) he favored the use of electronic surveillance as a fact finding tool; (4) he had been exposed to pretrial publicity concerning the case; (5) he was "leaning toward guilty" as a result of pretrial publicity; (6) he believed the defendant "was probably guilty;" and (7) he wanted to be a juror on the case.

Second, the State observes, the defense failed to avail itself of a challenge for cause available against Enriquez. Question 66 on the jury questionnaire was designed to determine if venire members were subject to automatic disqualification under article 35.16(a)(10). It asked: "Based upon what you have heard and know, from whatever source, have you reached a conclusion as to the defendant's guilt or innocence?" Enriquez was the tenth of 25 venire members who were called to the bench individually for elaboration on their written answers to that question. In colloquy at the bench, Enriquez stated that "I've not reached a conclusion, but I'm leaning one way," and "I don't think I could be fair and impartial." Defense counsel declined the court's invitation to question Enriquez at the bench after this statement, or to challenge him when he resumed his seat.

The State argues that defense counsel's failure to challenge this seemingly strong "State's juror" for cause appears at first to be "an act of gross incompetence." The trial court stated as one of its findings that it would have sustained a defense counsel challenge of Enriquez for cause for bias against the defendant, if one had been urged, but that "[d]espite the Court's invitation, defense refused to question Mr. Enriquez or challenge him." The State reasons that, because of defense counsels' skill and experience, the only rational explanation for their declining to challenge is that they knew something about Enriquez that the State did not.

Defense attorney Stanley Schneider stated in his affidavit that during voir dire:

I saw Mr. Enriquez's response to question 20. However, I did not think it meant that he was currently on deferred adjudication, but rather, because the State had not asked him any questions and Judge Poe had conducted the initial qualifying of the jury, I assumed and believed that his answers referred to a prior deferred. At the time, it did not even occur to me that he could have currently been on deferred.

It has been my experience that the District Attorney's office sometimes performs criminal history checks on potential jurors prior to or during voir dire because they have direct access to the Harris County computer records from their offices and can do so easily and quickly. By comparison, in order for a defendant to conduct a criminal history check on potential jurors, he is required to go to the public service section of the District Clerks office and wait for a clerk to obtain the records, a process that often takes hours for only a few names.

Schneider's co-counsel, Troy McKinney, testified by affidavit that at no time during jury selection was he aware that Enriquez was on deferred adjudication; that he did not "hide behind the log" in order to create or manufacture error; that during his examination of his part of the jury information sheets (in the division of labor between himself and co-counsel Schneider), he did not see Enriquez's answer to question 20; and that Schneider did not tell him that he had seen Enriquez's answer or believed Enriquez had a prior deferred adjudication. McKinney explained why he did not move to strike Enriquez after the bench conference, based on his answers concerning question 66. McKinney stated that Enriquez's written answer to question 68

indicated that he believed that the media rarely reports all the facts, but that he felt that he would get all the facts in the courtroom. Given his feelings towards the incompleteness of the media and his direct "no" answer to Question 67, I decided not to strike him. I did not ask him any questions at the bench because I did not

want to highlight what I considered to be a favorable position in his written answers, the substance of which I believed the State had overlooked.

McKinney further stated that, based on the defense's pretrial research, he was surprised that more of the potential jurors did not express feelings of "probably guilty," given the quantity of negative publicity concerning the case. In short, he stated, "I expected the overwhelming majority of potential jurors to mark the probably guilty space." He recalled that other jurors interviewed at the bench "expressed words that might have sustained a challenge for cause, that I did not challenge for various reasons."

Prosecutor Casey O'Brien testified by affidavit that he and his co-prosecutor, Mark Anderson, spent the day before voir dire examining the responses to the 100–question questionnaire answered by each of the 150 venire members. O'Brien stated that

Mr. Anderson told me that [Enriquez] had a prior deferred adjudication for possession of narcotics. I did not ask him how he knew that. I did not think of the matter again until we began to exercise our strikes when I asked Mr. Anderson if he knew why the defense attorneys wanted that juror in light of his answers on the questionnaire about his preconception as to the defendant's guilt.

Prosecutor Mike Anderson stated in his affidavit that O'Brien

noted on the cover page of his questionnaire that [Enriquez] had a "prior probation" after we discussed that he had gotten a deferred adjudication for drugs and that he had lived it out. We based this conclusion on the fact that Mr. Enriquez did not respond to Judge Poe's questions regarding convictions or pending indictments. This conclusion was reinforced when he failed to respond to Judge Godwin's questions of a similar nature.

We will assume, without deciding, that in some appropriate fact situation, as the State urges and *Thomas* suggests, a defendant can waive or be estopped from urging an impaneled juror's absolute disqualification by "laying behind the log," *i.e.*, by learning of a juror's disqualification before or during jury

selection, refusing to make it known promptly, and asserting the disqualification for the first time on motion for new trial. This case, however, is not that appropriate situation.

We read *Thomas* as suggesting that the proper case for waiver or estoppel will be one where the defense possesses information not equally available to the prosecution and suppresses it. Here, State and defense had equal opportunities to see and pursue Enriquez's written jury questionnaire answers about deferred adjudication. The attorneys' affidavits show that one prosecutor and one defense attorney assumed Enriquez's deferred adjudication had been terminated. The first prosecutor conveyed his assumption to the other prosecutor as a fact; the second prosecutor accepted his partner's conclusion. One defense attorney also assumed a discharged deferred adjudication, particularly because the State, with the benefit of its investigator to check the clerk's records, said nothing in voir dire. The first defense attorney said nothing about Enriquez's answers to his co-counsel. The second defense attorney testified he did not see Enriquez's written answers to the two questions, but based his decision not to strike him on Enriquez's favorable responses to questionnaire inquiries about media accuracy.

As in *Thomas,* the State "knew or at least should have known" of the juror's disqualification to the same extent as the defense. 796 S.W.2d at 199. Similarly, "[w]e are unwilling to say that [the defendant] has waived error in this case when the State is at least equally culpable for there being error in the record." *Id.*

We overrule the State's second point of error.

We affirm the trial court's judgment.