IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 0950-03






ALEXIUS JAMALL NELSON, Appellant



v.



THE STATE OF TEXAS, Appellee





ON DISCRETIONARY REVIEW


FROM THE SEVENTH COURT OF APPEALS


HARRIS COUNTY






 Womack, J., delivered the opinion for a unanimous Court.


 This case presents a question of the authority of courts to reverse a conviction on
appeal on the ground that a juror was absolutely disqualified.

 The term "absolutely disqualified" is derived from the catchline of Article 35.19 of
the Code of Criminal Procedure:

 Art. 35.19. Absolute disqualification

 No juror shall be impaneled when it appears that he is subject to the second,
third or fourth cause of challenge in Article 35.16, though both parties may
consent.



Those reasons for challenges for cause, as enumerated in Article 35.16(a), are:


 2. That he has been convicted of theft or any felony;


 3. That he is under indictment or other legal accusation for theft or any felony;


 4. That he is insane.


 Article 35.16(a) also contains this paragraph:

 No juror shall be impaneled when it appears that he is subject to the second,
third or fourth cause of challenge set forth above, although both parties may
consent. All other grounds for challenge may be waived by the party or
parties in whose favor such grounds of challenge exist.


 In this case, a member of the jury array volunteered the information about his
absolute disqualification. He was Number 19 in a panel of 65 potential jurors who came to
the district court. After six hours of voir dire examination, and as the court was hearing and
ruling on challenges for cause at the bench, Number 19 asked if he could approach. He told
the court, "I was not honest in swearing in this morning. When I was 17 I was convicted of
misdemeanor theft.  I got an hour in jail and a fine.  I'm 61 years old, I was 17 then."

 The judge said, "I think the problem is that that makes him disqualified, even a Class
C Theft, if you paid a fine." After Number 19 assured the court that he had paid a fine, the
judge said, "I think that disqualified him. We can go back and look at the statute. If y'all
disagree as a matter of disqualification."

 The defense attorney said, "We have a record of him, we checked it."

 The court offered, "If you all want, I'll check the statute. If it disqualifies him, it
disqualifies him." The judge consulted the Government Code and the Code of Criminal
Procedure -- in particular, Article 35.16. According to the judge, that statute meant that "if
neither of you challenge he may stay on the jury."

 The prosecutor advised the judge to "go down another section or two." After some
off-the-record discussions, the court recessed for five minutes.

 After the recess, the court told Number 19, "In answer to your question, there is a
special Article which says -- and is not with the others, it's all by itself -- it says that
someone who has a theft conviction may not be impaneled unless both parties consent. So
that's where we are now.

 "Does the State consent to impaneling [Number 19]?"

 The State had "no objection, if the defense has no objection." The prosecutor did ask
Number 19 if he could be a fair juror to both sides, and Number 19 said that he could.

 The defense attorney said, "I have no objection, Your Honor."

 The court ruled, "Right now, you're still on the jury." Neither party challenged
Number 19 for cause or peremptorily, and he served on the jury that found the appellant
guilty of capital murder.

 All now agree that the parties' consent would not permit Number 19 to be seated.
The trial court may have misread Article 35.19 or the similar paragraph in Article 35.16(a)
to permit the service of an absolutely disqualified juror when both parties consent, rather
reading it correctly to forbid such service even though both parties consent.

 After the trial court sentenced the appellant to imprisonment for life as Code of
Criminal Procedure article 37.071, section 1 requires when the State has not sought the
death penalty, this appeal followed.

 The Seventh Court of Appeals reversed the judgment of conviction. It held that the
ground of the juror's disqualification was preserved for review.

 As a general rule, in order to preserve a complaint for review on
appeal, the claimed error must have been presented in the trial court thereby
providing the trial court the opportunity to correct any error during the
course of the trial. See Tex. R. App. P. 33.1(a); Norris v. State, 902 S.W.2d
428, 446 (Tex. Cr. App. 1995), cert. denied, 516 U.S. 890 (1995). Here,
however, the record demonstrates that the prospective juror's
disqualification was raised in the trial court before the jury was selected
which disclosure prompted considerable discussion, research, and
consideration by the trial court. Also, counsels' discussion with the trial
judge regarding the disqualification covers approximately ten pages of the
reporter's record. From the information provided by the prospective juror of
his theft conviction, the trial court concluded that the juror was disqualified,
but notwithstanding the constitutional implications, proceeded to mistakenly
impanel him concluding that the disqualification could be waived. Moreover,
this contention is analogous to a sufficiency of the evidence challenge, see
generally Givens v. State, 26 S.W.3d 739, 740 (Tex. App. -- Austin 2000,
pet. ref'd); Flanary v. State, 166 Tex. Crim. 495, 316 S.W.2d 897, 898
(1958), or error based on an ex post facto claim. See generally Ieppert v.
State, 908 S.W.2d 217 (Tex. Cr. App. 1995) (holding that an ex post facto
claim may be presented for the first time on appeal because a categorical
prohibition may not be waived). See also Blue v. State, 41 S.W.3d 129,131
(Tex. Cr. App. 2000). (1)


 Turning to the question, "Is Error Reversible?" the court said:

 The State contends that error, if any, was harmless and that under
article 44.46 of the Code of Criminal Procedure, appellant's conviction
cannot be reversed on the ground that an absolutely disqualified person was
impaneled on the jury. We disagree. Following the decision in Thomas v.
State, 796 S.W.2d 196, 199 (Tex. Cr. App. 1990), article 44.46 was added to
Chapter 44, entitled "Appeal and Writ of Error." Without amending or
modifying articles 35.16 or 35.19, article 44.46 addresses the reversal of
conviction where an absolutely disqualified person serves on a jury. Under
article 44.46(1), a conviction is reversible without a showing of harm if the
defendant "raised" the disqualification before the verdict was entered;
however, under (2) where the disqualification is not discovered or brought to
the attention of the trial court until after the verdict is entered, the conviction
is not reversible absent a showing of significant harm. However, because the
disqualification could not be waived, see paragraph 11 of article 35.16, and
the error occurred when the trial court did not sua sponte excuse the
disqualified juror during the jury formation as required by Green v. State,
764 S.W.2d 242, 246 (Tex. Cr. App. 1989), articles 44.46(1) and (2) are not
applicable. See also Pogue v. State, 553 S.W.2d 368, 370 (Tex. Cr. App.
1977) (holding that where the trial court is on notice of error in seating the
panel before the jury is sworn, and the error is not corrected, automatic
reversal is required.)

 The question of the absolute disqualification of juror number 19 was
first brought to the attention of the trial court during voir dire when juror
number 19 told the judge that he had not been "honest in swearing in" and that
he had a prior conviction. As shown by our review of the relevant portion of
the discussion in the reporter's record, before the jury was impaneled, the
disqualification of the juror was discussed at a bench conference. While the
question was being considered by the court, on one occasion, as defense
counsel handed a book to the trial judge, he suggested that instead of
"excuses" the issue was "disqualification." Even if applicable, article
44.46(1) does not require that the issue be "raised" in a specific manner.
Moreover, substantial compliance with requirements of the Code of Criminal
Procedure is sufficient. See Bennett v. State, 394 S.W.2d 804, 807(Tex. Cr.
App. 1965); Aspilla v. State, 952 S.W.2d 610, 612-13 (Tex. App. --
Houston [14th Dist.] 1997, no pet.). Considering defense counsel's
participation in conference with the judge and prosecutor, the law of
substantial compliance and the axiom that the law does not require the doing
of a "useless thing," Williams v. State, 549 S.W.2d 734, 737 (Tex. Cr. App.
1977), we conclude that for purposes of article 44.46(1), the defense
"raised" the issue of juror disqualification before the verdict was entered. (2)

 

The court of appeals also held that the error required reversal without consideration of
harm, or that if a harm analysis were required, the error in seating the juror was harmful. (3)
We granted review.

 We disagree with the court of appeals' reasoning in several respects: One was its
conclusion that, "because the disqualification could not be waived, see paragraph 11 of
article 35.16, and the error occurred when the trial court did not sua sponte excuse the
disqualified juror during the jury formation  articles [sic] 44.46(1) and (2) were not
applicable." Article 44.46 applies to all cases of absolute disqualification.

 Article 44.46, entitled "Reversal of Conviction on the Basis of Service by a
Disqualified Juror," provides:

 A conviction in a criminal case may be reversed on appeal on the ground that
[a juror ]in the case was absolutely disqualified from service under Article
35.19 of this code only if:

 (1) the defendant raises the disqualification before the verdict is
entered; or

 (2) the disqualification was not discovered or brought to the attention
of the trial court until after the verdict was entered and the defendant
makes a showing of significant harm by the service of the disqualified
juror.


 The article applies only to absolute disqualifications (those that could not be "waived" or,
more precisely, consented to) and when the trial court fails to disqualify the absolutely
disqualified juror on its own motion.

 If either party challenged such a juror for cause, the trial court's ruling on the
challenge would be the basis of the appeal. There would be no occasion for Article 44.46 to
apply.

 The error in the court of appeals' reasoning is highlighted by its citation, "See also
Pogue v. State, 553 S.W.2d 368, 370 (Tex. Cr. App. 1977) (holding that where the trial
court is on notice of error in seating the panel before the jury is sworn, and the error is not
corrected, automatic reversal is required.)" This is the kind of holding that Article 44.46
would prevent.

 Also a matter of concern is the court of appeals' holding, "Even if applicable, article
44.46(1) does not require that the issue be 'raised' in a specific manner." The statute
specifies one important, specific manner in which the issue must be raised in order for
Article 44.46(1) to apply: the defendant raises the disqualification before the verdict is
entered.

 Another troubling point about the court of appeals' analysis was related to the
second; it assumed that the usual rules for preservation of error applied, and it omitted an
essential part of even those usual rules. The usual rule for preservation of error for appeal
is Rule of Appellate Procedure 33.1(a), which the court of appeals cited. But it overlooked
the first requirement of the rule, which is that "a complaint was made to the trial court by
 request, objection, or motion." (4) The appellant made no complaint to the trial court. (As
we have said, if a challenge to Number 19 had been made, this would be a different case.) In
fact he did the opposite; he said that he had no objection.

 Article 44.46 is different from the usual rules of error preservation. As we have
said, it affects cases in which the parties have not challenged jurors for cause as they are
required to do. The statute limits the authority of a court to reverse a conviction on appeal
on the ground of an absolutely disqualified juror to two kinds of cases, in which "(1) the
defendant raises the disqualification before the verdict is entered; or (2) the
disqualification was not discovered or brought to the attention of the trial court until after
the verdict was entered and the defendant makes a showing of significant harm by the
service of the disqualified juror." The clauses are significantly different.

 Before the enactment of the statute, this court had inferred from Articles 35.16(a)
and 35.19 that the seating of an absolutely disqualified juror always called for reversal even
when a defendant first raised the question in a motion for new trial. (5) Clause (2) puts a
burden on the defendant to meet a new standard of harm in such cases, when the
disqualification is raised after the entry of the verdict. In this clause it makes no difference
who discovers the disqualification or how it is brought to the attention of the trial court;
that portion of the clause is in the passive voice. A duty on the defendant arises in an appeal
to make a showing of significant harm. A defendant may have his conviction reversed on
appeal, even though he did nothing before the verdict was entered, but only if he meets a
high standard that Article 44.46(2) raises on appeal. Presumably some defendants who once
could have obtained reversals on appeal merely by showing a disqualification in a motion
for new trial now will not obtain reversals because they will not be able to meet the burden
to show significant harm. Thus the defendant is discouraged from waiting until after the
verdict to begin thinking about the problem of a disqualified juror. The evident purpose of
this clause is to deal with the defendant who did not learn, but could have learned, before
the verdict that a juror was absolutely disqualified. (6)

 Clause (1), which is in the active voice, puts a duty on the defendant to raise a
disqualification before the verdict is entered. If a defendant takes that action, he may obtain
a reversal on appeal without carrying a high burden to show harm. This encourages a
defendant not only to start thinking about disqualified jurors before the verdict is entered,
but to raise the disqualification if he learns of it before verdict. The evident purpose of this
clause is to deal with the defendant who could have raised, but did not raise, the issue. This
comports with the purposes of rules for error-preservation, which "promote the prevention
and correction of errors. When valid objections are timely made and sustained, the parties
may have a lawful trial. They, and the judicial system, are not burdened by appeal and
retrial. When a party is excused from the requirement of objecting, the results are the
opposite." (7) Whether this purpose or some other moved the legislature to enact Article
44.46 we do not know, and we need not know in order to apply the unambiguous wording of
that statute.

 This appellant could have raised, but did not raise, the disqualification before the
verdict was entered. He actually did the opposite of raising the issue by telling the court
that he had no objection to the disqualified juror. We cannot hold, as the court of appeals
did, that the defendant's failure to raise the issue was of no consequence so long as
someone raised it. His failure to raise the issue means this judgment of conviction may not
be reversed under Article 44.46.

 For these reasons there is no occasion for us to address the court of appeals'
holdings on the issue of harm.

 The judgment of the court of appeals is reversed, and the appeal is remanded to that
court so that it may consider the appellant's other points of error.


En banc.

Delivered: March 10, 2004.

Publish.




 
1. Nelson v. State, No. 07-01-0425-CR, slip op. at 14-15 (Tex. Cr. App. -- Amarillo April
24, 2003) (not designated for publication).
2. Id., slip op. at 15-17.
3. Id., slip op. at 17-19.
4. Tex. R. App. P. 33.1(a)(1).
5. See Thomas v. State, 796 S.W.2d 196 (Tex. Cr. App. 1990). The court of appeals pointed
out that Article 44.46 was enacted after the Thomas decision, but we think it might be more accurate
to say that the enactment of the statute in 1993 came after the granting of a new trial in the fall of 1991
in a sensational case of solicitation to commit capital murder, see State v. Holloway, 886 S.W.2d 482
(Tex. App. -- Houston [1st Dist. 1994], pet. ref'd) (affirming trial court's decision to grant new trial),
cert. denied, 516 U.S. 922 (1995).
6. This clause would have applied to Thomas and Holloway, neither of whom were shown to
have had such knowledge before the verdict. See Holloway, 886 S.W.2d, at 487-88 ("We will
assume, without deciding, that in some appropriate fact situation, as the State urges and Thomas
suggests, a defendant can waive or be estopped from urging an impaneled juror's absolute
disqualification by "laying behind the log," i.e., by learning of a juror's disqualification before or during
jury selection, refusing to make it known promptly, and asserting the disqualification for the first time on
motion for new trial. This case, however, is not that appropriate situation"); Thomas, 796 S.W.2d, at
198-99 ("there is no indication in the record before us that the defense knew of the juror's theft
charges until the time of the motion for new trial"). 
7. Saldano v. State, 70 S.W.3d 883, 887 (Tex. Cr. App. 2002).