*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★ ★ ★ ★

## MEMORANDUM OPINION

No. 04-06-00845-CR

Eric Joel **ALEMAN,**
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. B06-17
Honorable Emil Karl Prohl, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:    Alma L. López, Chief Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed:   August 27, 2008

AFFIRMED

A jury convicted Eric Joel Aleman of aggravated assault with a deadly weapon on Philip

Garcia and sentenced him to ten years and one day in the Texas Department of Criminal Justice –

Institutional Division. Aleman timely appealed, raising three issues – sufficiency of the evidence,

juror bias, and the trial court's refusal to admit certain evidence. We affirm the trial court's

judgment.

**BACKGROUND**

On the evening of October 29, 2005, Katrina Gray and Monica Castorena were on their way to a party at their friend Eric Dash's house when they stopped for gas at a convenience store in Kerrville, Texas. While Gray was pumping gas, two men, later identified as appellant and his brother Michael Aleman, tried to engage Castorena in conversation and expressed a desire to "party" with the women. Gray testified the men made her uncomfortable, so the women left the store. The men followed them in a small sport utility vehicle. Both women testified the driver of the sport utility vehicle, later determined to be Michael Aleman, tried to "run them off the road" several times. Gray became more frightened as she drove to Dash's house. She drove to a parking area behind Dash's residence where both women jumped out of the vehicle and ran into the house yelling that two men were following them. Gray also set off the vehicle's alarm.

A number of people were standing outside the Dash residence and saw Gray and Castorena arrive. Three of the individuals, Philip Garcia,[1] Julian Garcia, and Joseph Aguilar, each testified he saw a car follow the women into the parking area behind the residence, turn around, and start to leave. The three men began to chase the car and exchanged words with the occupants of the vehicle – the Aleman brothers. The Aleman brothers stopped their car and got out. A fight ensued. When it was over, Philip Garcia, Joseph Aguilar, and Julian Garcia had each received knife wounds.

Roxanna Molina testified she was inside the house when Gray and Castorena ran inside and exclaimed they were being followed by two men. When Molina went outside, both Joseph Aguilar and Julian Garcia ran past her with injuries they apparently sustained in the fight. Molina then saw Philip Garcia lying on the ground and two men "stabbing and kicking" him. She originally testified

---

[1] Philip Garcia testified his given name is Felipe Antonio Garcia and this name is used in the indictment. However, throughout the trial and in his testimony, he was referred to as "Philip" and we will continue that convention in this opinion.

she saw a knife, but admitted on cross-examination she did not. By way of explanation, she stated she was not close enough to see what was in the assailant's hand, but she did see "a lot of blood all over Philip." When Molina ran toward the men and told them the police were on the way, they got into their car and drove away. Molina was able to see the last three digits of the license plate and later gave that information to the police. The three victims, Joseph Aguilar, Julian Garcia, and Philip Garcia, were taken to the hospital in Molina's car.

Two days later, based on the partial license plate number, Kerrville police officers located a silver sport utility vehicle driven by Michael Aleman. When the police searched Michael Aleman, they found two "lock-blade" knives in the open position in his pockets. In his oral statement to police, which was admitted into evidence, Michael Aleman admitted he and his brother Eric "followed some girls" to a residence in Kerrville. Michael admitted he was driving the car. He told police that when he parked the car and started to get out, a group of people attacked him and Eric. Michael said the group was armed with a bat and beer bottles and someone pulled Eric out of the car and hit him in the head with a beer bottle. Michael Aleman claimed he and Eric acted in self defense and the only weapon they had was a knife Michael took from one of the attackers.

Michael and Eric Aleman were indicted separately. The indictment against Eric Aleman alleged he "intentionally and knowingly use[d] a deadly weapon, to-wit: a knife, that by the manner of its use and intended use was capable of causing death and serious bodily injury and did then and there intentionally and knowingly cause bodily injury to Felipe Antonio Garcia, by cutting the top of his head."

**SUFFICIENCY OF THE EVIDENCE**

Aleman first challenges the legal and factual sufficiency of the evidence, contending there is insufficient evidence he used a knife, that any fight or assault was the "result of a [his] conscious choice," or that he knowingly joined an assault as a party.

*Standard of review*

When we review the evidence for legal sufficiency, we look at all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Prible v. State*, 175 S.W.3d 724, 729-30 (Tex. Crim. App.), *cert. denied*, 546 U.S. 962 (2005). We resolve any inconsistencies in the testimony in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). When reviewing the evidence for factual sufficiency, we look at the evidence in a neutral light, while giving almost complete deference to the jury's determinations of credibility. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We will reverse only if the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust or if the evidence supporting the verdict is outweighed by the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

*Discussion*

Julian Garcia, Philip Garcia, and Joseph Aguilar all testified Philip began exchanging punches with the passenger – Eric Aleman – as soon as the group reached the car. Julian testified he saw Philip knocked to the ground several times and saw Eric kicking Philip in the face. Julian testified he ran to help Philip and started to hit Eric. Aguilar testified that when he saw the passenger "attacking" Julian, Aguilar started hitting the passenger. Aguilar testified that at that point, "all I felt was was [sic] just he come around me. Got me." Aguilar felt a sharp pain, saw he

was bleeding, and ran to the house. Although Aguilar did not see the weapon the passenger used on him, he testified he was treated for a stab wound that caused injuries to his stomach, small intestine, and pancreas. This evidence, coupled with the evidence Eric Aleman was the passenger in the car, places a weapon capable of cutting and causing internal injuries consistent with those caused by a knife in the hands of Eric Aleman.

Philip Garcia testified he was running after the sport utility vehicle when the passenger jumped out and they began to fight. Garcia testified about the injuries he received, including a stab wound to the head, and testified he received "staples and stitches" for his injuries. Although Garcia could not identify Eric Aleman as his assailant, Aguilar, Julian, and Philip Garcia all testified Philip was fighting with the passenger, Eric. Finally, Molina testified she saw the Aleman brothers standing over Philip Garcia as he lay prone on the ground and both were "stabbing" and kicking Philip.

Viewing the evidence in the light most favorable to the jury's verdict, and drawing reasonable inferences from that evidence, there is legally sufficient evidence to support the conviction. And, viewing the evidence in a neutral light, we cannot say the verdict is against the "great weight and preponderance" of the evidence nor is the evidence so weak that the verdict is clearly wrong and manifestly unjust.[2]

---

[2]Aleman contends the evidence is also insufficient to demonstrate his culpability as a party. Because we conclude the evidence is legally and factually sufficient to sustain his conviction as a principal, we do not address this issue. Aleman does not explain his complaint that the evidence is insufficient to prove he made a "conscious choice" to commit the assault. There is no evidence his actions were somehow "involuntary." If Aleman is referring to the issue of self-defense, the jury rejected the defense, and Aleman's brief contains no argument about sufficiency of the evidence with regard to self-defense. This complaint is therefore inadequately briefed and presents nothing for review. *See Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008); TEX. R. APP. P. 38.1(e), (h).

## DENIAL OF MOTION FOR NEW TRIAL

Aleman next contends the trial court abused its discretion in denying his motion for new trial because one of the seated jurors was a registered sex offender. Aleman's trial attorney filed an affidavit in support of the motion in which he stated he first learned of the juror's status after the evidence closed and the jury was deliberating. The motion for new trial included proof the juror was a registered sex offender, but no proof the juror had been convicted of, or was under indictment or other legal accusation for, a felony. Rather, the motion alleged the juror "received deferred adjudication for a sex offense and ostensibly successfully completed it." The motion was overruled by operation of law. On appeal Aleman contends that although the juror "was not technically disqualified," reversal is required because the juror's status as a registered sex offender puts him "under constant scrutiny by law enforcement" thus making him "presumptively biased as a matter of law."

A juror who has a bias or prejudice in favor of or against the defendant may be challenged for cause. TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(9) (Vernon 2006). However, it is not an absolute disqualification, and a "challenge for cause is forfeited if not made. Failure to question the jurors on that subject constitutes a forfeiture of the right to complain thereafter." *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). Neither party asked questions during voir dire that would have been likely to elicit this information from the juror. "It is incumbent upon counsel to specifically ask questions which will determine whether they have a right to challenge the venire member." *Id.* at 113. When, as here, counsel fails to do so, he forfeits the right to complain the juror

should have been excused. *Id.* The trial court therefore did not abuse its discretion in denying the motion for new trial.[3]

### EVIDENTIARY RULINGS

In his final ground for review, Aleman contends the trial court erred "in not allowing evidence of Joseph Aguilar's prior assaultive behavior." We disagree.

When the defendant claims the alleged victim of an assault was the first aggressor, prior specific acts of violence may be admissible to show the victim's state of mind. *Torres v. State*, 117 S.W.3d 891, 894-95 (Tex. Crim. App. 2003); *Mozon v. State*, 991 S.W.2d 841, 845-46 (Tex. Crim. App. 1999); TEX. R. EVID. 404(a)(2). Before such evidence is admissible, there must be some evidence of aggression by the victim during the events that gave rise to the current charges. *Torres*, 117 S.W.3d at 895. The predicate for admission of a prior specific violent prior act of the victim "is some act of aggression that tends to raise the issue of self-defense, which the violent act may then help clarify." *Torres*, 117 S.W.3d at 895.

Aleman argues the trial court erred in sustaining the State's objection when he asked Katrina Gray whether "Joseph beat up Monica" because evidence of Aguilar's extraneous acts of violence was admissible to show Aguilar was the first aggressor. Aleman does not present any argument as to why prior acts of violence by Joseph Aguilar –someone other than the complaining witness – are admissible under Rule 404(a)(2). But we need not decide this question because, even if the rule applies to evidence of Aguilar's prior acts of violence, the predicate for the admission of such acts had not been laid when counsel asked Gray the question. Katrina Gray was the State's first witness.

---

[3]Our conclusion would be the same if the juror were found to have been absolutely disqualified because he was "under indictment or other legal accusation" for a felony. *See* TEX. CODE CRIM. PROC. ANN. arts. 35.16(a)(3), 35.19 (Vernon 2006). Because counsel learned of the ground for disqualification before the verdict was entered but failed to raise it, the judgment may not be reversed on that ground. *See id.* art. 44.46; *Nelson v. State*, 129 S.W.3d 108, 112-13 (Tex. Crim. App. 2004).

When defense counsel asked her whether Aguilar had previously beaten Monica, the only evidence before the jury about Aguilar was Gray's testimony that he was one of the people in the rear driveway area when she and Castorena arrived at the Dash house, that Gray did not see Aguilar with a bat or any kind of weapon, and that Castorena dated Aguilar. Because no evidence of any act of aggression by Aguilar during the event giving rise to the current charges had been offered, the trial court did not abuse its discretion in excluding the evidence.

Aleman next complains the trial court erred in preventing him from questioning Monica Castorena about "her volatile relationship" with Aguilar. We again disagree. During Aleman's cross-examination of Castorena, counsel asked her if she and Aguilar broke up some time after October 29, 2005. She responded that they had their "ups and downs," they would argue, then make up and get together again. After this response, the State asked for a bench conference. The prosecutor stated he thought Aleman was going to ask Monica about specific acts of conduct and wanted a ruling from the court. Defense counsel responded: "I'm going to ask if they broke up because – he thinks that these girls set this thing up." The court ruled the question called for speculation. When defense counsel responded, "Not if he told her that," the State objected the question would then call for hearsay and the trial court sustained the objection. On appeal, Aleman does not address either the trial court's speculation or hearsay rulings. Rather, he argues generally that "the jury had the right to know about [Aguilar's] violent propensities." However, Aleman did not attempt to ask Castorena any other questions about "her volatile relationship" with Aguilar or Aguilar's "violent propensities," nor did the trial court rule on the admissibility of such evidence. We therefore overrule Aleman's third ground for review.[4]

---

[4]We note the court's charge instructed the jury self defense was an affirmative defense and incorrectly assigned the burden of proof to Aleman. Aleman did not object to the charge at trial and does not complain of the error on appeal. However, after examining the record and reviewing the issue as unassigned error, we conclude Aleman did not suffer

The trial court's judgment is affirmed.

Steven C. Hilbig, Justice

Do not publish

---

egregious harm resulting from this charge error. *See Sanchez v. State*, 209 S.W.3d 117, 120-21 (Tex. Crim. App. 2006).