**AFFIRMED AS MODIFIED and Opinion Filed August 5, 2024**



**In the**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-22-01176-CR**

**EMANUEL GARCIA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 265th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F21-76280-R**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Carlyle
Opinion by Justice Carlyle

A jury found Emanuel Garcia guilty of murder and assessed punishment at 30 years' confinement. On appeal, he challenges evidentiary sufficiency and the trial court's qualification of the jury. In a cross-point, the State requests we modify the judgment. We affirm as modified. *See* TEX. R. APP. P. 47.4.

Garcia shot Jesus Canales in the head at close range in a bar's parking lot. Afterwards, Garcia returned to his truck and drove away without checking on Canales or calling the police. In the days after the shooting, Garcia disposed of his

gun and cell phone, shaved his head, and fled Dallas only to be arrested several days later on a bus to El Paso.

Garcia contends the evidence was "factually insufficient to support the jury's implicit rejection" of his defense of third person claim. The State bears the burden of persuasion to negate a defense of others claim by proving its case beyond a reasonable doubt, and we review this challenge under the familiar *Jackson v. Virginia* standard. *See Rankin v. State*, 617 S.W.3d 169, 182 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 894, 901–02 (Tex. Crim. App. 2010)). We review all the evidence and reasonable inferences therefrom in the light most favorable to the verdict to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt and rejecting the defense of third person claim. *Rankin*, 617 S.W.3d at 182. The veracity of a self-defense or defense of others claim is an issue of fact to be determined by a jury, and the State is not required to present evidence contrary to a defensive theory. *See Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991).

Garcia focused his defense on threats he said Canales and Canales's cousin had made to him but that were directed at his family. His uncle, Evaristo Dominguez, had introduced Canales to his nephew, Garcia, and the three had been friends for some two years. Garcia described hanging out at least weekly with Canales and that Canales was actually closer to his uncle Dominguez. According to Garcia, the threats started some four months before he shot Canales. He told his mother, Dominguez's

sister, about the threats, and told Dominguez as well. Garcia viewed himself as working to calm the situation.

Later, Garcia described a situation when he thought Canales's cousin would beat him up after approaching him "like Predator style, I'm hunting you down. I'm looking for ways I'm going to torture you, if you don't tell me whatever I want to find out." Garcia said Canales was initially "not paying attention," but that when he noticed, Canales got in between the two of them and told the cousin not to "mess with him" and "diffused the situation." Garcia said after that, his "guard was up" and his "PTSD was up." He said he was in "survivor mode at that moment." Garcia said he was "constantly worried" after that, "couldn't sleep," and feared someone would break in and kill his mom.

Despite having told Dominguez and his mother about the threats he perceived, Dominguez continued hanging out with Canales. Garcia described a third incident at one Beto's house, where Dominguez asked Canales if there was a problem and Canales said "How many times do I have to tell you? I don't have a problem with you, sir." Garcia perceived Canales to have been "a little bit aggressive" about approaching Dominguez, but Garcia left with the hope that any problem was resolved.

The night of the murder, it was Garcia who asked Canales to go out to the bar. Garcia even drove them, but described how Canales, "out of nowhere," surprised him by saying "You don't go putting your family['s] lives[] in danger." Garcia said

he decided to play it cool, but that this meant there was a very real threat. He said it only got worse when they got to the bar to see that Dominguez, the person Garcia perceived as the target of threats, was there. He believed the threat was very real but described feeling that the best way to handle the situation was to stay calm, have his drinks, stay close to Canales and his uncle, but also to have fun with a friend and get home safely.

Within this plan to keep tensions low, to play it cool, and get along, Garcia justified buying drinks and said this explained why the video appeared to show he and Canales getting along. Garcia described continuing to watch Canales, who went outside, and said he thought this was a good time to grab his gun and extra clip from his truck. Garcia described needing the clip because he perceived many people with Canales that night and that there seemed to be something funny between them that he was not privy to.

Dominguez testified he had to calm Garcia down during the evening because Garcia was agitated at times. Steve Gamez, Canales's cousin, also described Garcia as agitated. Garcia explained that he felt terror, his "PTSD was to the roof," "anxiety was to the roof," his "senses were at their peak," and that he was "ready to attack." Garcia believed his uncle didn't know anything was going on. Dominguez described never being in fear of Canales or anyone with him that night at all.

Once outside at the end of the night, Garcia described seeing Canales go to Dominguez's truck. Garcia said this was of great concern to him because all his fears

of the pending attack on his uncle were materializing. Meanwhile, Dominguez described he was clearing a basket out of the way so his friend Canales could ride home with him when Garcia drove over, stepped out of his truck, and shot Canales in the head.

Garcia admitted he saw no weapon on Canales, which Dominguez confirmed, but that he saw some sudden movement Canales made that triggered him to shoot. This, of course, happened after he drove his truck directly up to Dominguez and Canales. Police never found a weapon on or near Canales, and surveillance showed no one removed a weapon from Canales's area once he was down. Garcia quickly drove off without checking on Canales, and told his uncle to leave immediately. Dominguez described speaking to Garcia in the days that followed, and that when he asked why Garcia killed Canales, Garcia said it was "because he was fucking him over."

We must defer to the jury's credibility determinations and their resolutions of disputed versions of events. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Here, though Garcia presented evidence to support his defense of third person claim, a rational jury could have concluded that deadly force was not immediately necessary to protect Dominguez. *See* TEX. PENAL CODE §§ 9.31–.33. The jury's verdict reflects the fact that it did not believe Garcia's version of events, of a building threat culminating in a set up perpetrated by multiple opponents who intended to harm him or his uncle. The jury's guilty verdict further evidences its rejection of Garcia's

defense and acceptance of the inculpatory evidence, including Dominguez's testimony that he never felt threatened by Canales and Garcia's admission that he killed Canales "because he was fucking him over." *See Saxton*, 804 S.W.2d at 914. At the very least, the evidence supported a rational conclusion that it was not reasonable for Garcia to use deadly force against Canales.

In so concluding, we reject Garcia's contention that § 9.32(b)'s presumption of reasonableness applies. Instead, the evidence established beyond a reasonable doubt that Garcia neither knew nor had reason to believe that Canales was committing or attempting to commit aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery at the time Garcia shot him. *See* TEX. PENAL CODE § 9.32(a)(2)(B), (b). We reject this issue.

Garcia also contends that the trial court failed to properly qualify the jury, denying him his Sixth Amendment right to a fair trial. The State concedes the trial court failed to ask the jury a required question but argues Garcia failed to preserve this issue and any error is harmless. *See* TEX. CODE CRIM. PROC. art. 35.12; TEX. R. APP. P. 44.2(b).

A trial court is required to ask veniremembers whether they are qualified voters under the Constitution and Texas law, whether they have been convicted of theft or any felony, and whether they are under indictment or legal accusation for a theft or any felony. *See* TEX. CODE CRIM. PROC. art. 35.12. Here, the record indicates

the trial court failed to ask whether any prospective juror was under indictment or other legal accusation for a misdemeanor theft or felony.

Texas Code of Criminal Procedure article 44.46 only permits reversal of a conviction on the ground that a juror was absolutely disqualified under article 35.19 (1) if the defendant raises the disqualification before the verdict is entered or (2) where the disqualification was not discovered or brought to the attention of the trial court until after the verdict was entered, the defendant makes a showing of significant harm by the disqualified juror's service. TEX. CODE CRIM. PROC. art. 44.46; *Nelson v. State*, 129 S.W.3d 108, 112–13 (Tex. Crim. App. 2004). Garcia did not raise disqualification before the verdict was entered.

A juror is "absolutely disqualified" if the juror (1) has been convicted of a theft or any felony, (2) is under indictment or other legal accusation for theft or any felony, or (3) is insane. TEX. CODE CRIM. PROC. arts. 35.16(a), 35.19. When an absolutely disqualified juror is seated and participates in rendering a verdict, a defendant bears the burden of showing significant harm. *Id.* art. 44.46(2).

Garcia concedes that no evidence in the record shows that an absolutely disqualified juror heard the case and that he cannot show significant harm. Assuming a juror who heard the case was absolutely disqualified, we could not reverse on that basis alone, as that juror's presence does not inherently constitute significant harm under article 44.46. *See White*, 225 S.W.3d at 574. Controlling precedent requires Garcia to make the showing of significant harm, and he has made no attempt to build

a record with evidence to support it. *See id.* at 574–75. Thus, Garcia did not satisfy his burden to show significant harm and we reject this issue.

In a cross-point, the State requests that we modify the judgment to reflect an affirmative finding that Garcia used a deadly weapon when he shot Canales. We have the power to modify judgments to speak the truth when provided with the necessary information. *McDade v. State*, 613 S.W.3d 349, 358 (Tex. App.—Dallas 2020, no pet.). The court did not submit a separate question asking jurors to find whether Garcia had used a deadly weapon, but the indictment specifically charged the use of a firearm as a deadly weapon. Garcia admitted to firing the gun and shooting Canales. The jury convicted Garcia of murder "as charged in the indictment," after having been fully instructed on the definition of a deadly weapon. We modify the judgment to reflect that the jury found Garcia used a deadly weapon.

In addition, the judgment inaccurately shows Garcia pled guilty when the record shows he pled not guilty. We modify the judgment to reflect that Garcia pled not guilty. *See id.*

We affirm as modified.

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
221176F.U05

–8–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EMANUEL GARCIA, Appellant

No. 05-22-01176-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F21-76280-R.
Opinion delivered by Justice Carlyle. Justices Partida-Kipness and Pedersen, III participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to reflect that the jury found Garcia used a deadly weapon and that he pled not guilty.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered August 5, 2024