**Dean E. TRENT, Plaintiff-Defendant by Countercomplainant-Appellee,**

v.

**Evelyn H. PARKER and J. T. Parker, Jr., Defendants-Countercomplainant-Appellants.**

and

**EAST LAWN MEMORIAL PARK, INC., Intervenor Plaintiff-Appellant, .**

v.

**Dean E. TRENT, Defendant by Intervening Complaint-Appellee.**

Court of Appeals of Tennessee, Eastern Section.

Sept. 7, 1979.

Certiorari Denied by Supreme Court Dec. 27, 1979.

Edwin L. Treadway, T. Arthur Scott, Jr. of Hunter, Smith, Davis, Norris, Treadway & Hadden, Kingsport, for defendants-countercomplainant-appellants.

William S. Todd of Todd & Dossett, Kingsport, for plaintiff-defendant by countercomplainant-appellee.

## OPINION

PARROTT, Presiding Judge.

Evelyn H. Parker and J. T. Parker, Jr., the defendants-counterclaimants, and East Lawn Memorial Park, Inc., intervening plaintiff, appeal from a final decree, which in part ordered the termination and cancellation of two insurance policies. East Lawn was owner and beneficiary of these policies which were issued on the life of Dean E. Trent, plaintiff-appellee.

The original complaint and the intervening complaint both sought payment of indebtedness allegedly due, and the countercomplaint asked for credits and setoffs. The chancellor determined the amounts due each party and incorporated this determination into the final decree. That portion of the decree has been complied with and is not at issue in this appeal.

During trial Trent was allowed to amend his complaint so as to seek the cancellation of the two aforementioned life insurance policies which totalled $350,000.00. The chancellor specifically held that East Lawn had no insurable interest in the life of Trent and ordered the policies cancelled. This appeal was thereafter perfected and the order of cancellation assigned as error.

Parker, who was actively engaged in an insurance agency which he owned, purchased a fifty percent interest in East Lawn from Trent. After this purchase, each owned one half of the outstanding common stock.

To allegedly allow the corporation to pay off certain notes in the event of death of either shareholder, Parker recommended that East Lawn take out an insurance policy in the amount of $250,000.00 on both he and Trent. These policies plus another $100,000.00 "key man" policy on Trent were purchased. In all, the corporation purchased $950,000.00 worth of life insurance from Parker.

At the time the insurance was purchased, Trent served as chief executive officer of the corporation and as its active manager. He continued in that role until 1975, at which time he sold his fifty percent interest to Evelyn Parker and dissolved all connections, other than that of a creditor, with East Lawn. This sale was allegedly caused by the disagreement between Parker and Trent over the amount of insurance owned by East Lawn. Parker's alleged failure to make the installment payments arising from the stock sale resulted in the filing of a complaint by Trent on March 18, 1977.

The amended complaint alleged that East Lawn no longer had an insurable interest in the insured's life and asked the court to order that the two policies be cancelled. As stated before, the court so found and so ordered. Although the court was correct in holding that East Lawn no longer had an insurable interest, it erred in ordering the policy cancelled for that reason.

 T.C.A. 48–402(k) specifically empowers a corporation with the right to purchase insurance on certain employees and a corporation certainly has an insurable interest in the life of its chief executive officer. *Wurzburg v. New York Life Ins. Co.*, 140 Tenn. 59, 203 S.W. 332 (1918). East Lawn, therefore, had an insurable interest in the life of Trent when the policies were purchased. The insurance policies were, therefore, initially valid. The subsequent cessation of an insurable interest does not invalidate an insurance policy which was valid when purchased. *Wurzburg v. New York Life Ins. Co.*, supra; *Marquet v. Insurance Co.*, 128 Tenn. 213, 159 S.W. 733 (1913); *Mutual Life Ins. Co. v. Schaefer*, 94 U.S. 457, 24 L.Ed. 251. The policy was, therefore, valid and it was error to order its cancellation for lack of an insurable inter-

est. Furthermore, the chancellor erred in allowing the appellee to amend his complaint to challenge the policy for lack of insurable interest. The majority rule allows only the insurer to raise the issue of lack of insurability. We think such to be a logical and sound approach.

The chancellor, in section ten of the final decree, stated:

> That the life insurance policies in the amount of $350,000.00, which were written on plaintiff's life with Provident Life and Accident Insurance Company in about September, 1975, just three months before the plaintiff sold his remaining interest in the capital stock of the corporation to the defendants who are now the sole owners of said corporation, which is the Intervening Plaintiff in this cause, which corporation is the owner and beneficiary under said policy, should not continue to be carried in force upon plaintiff's life, as plaintiff strenuously objects to said insurance being carried on his life in favor of a corporation with whom he has been engaged in extended litigation; and the Court holds that said corporation no longer has any insurable interest in the life of the plaintiff, that plaintiff strenuously objects to said insurance being carried on his life and that said corporation is given sixty (60) days to complete the termination and cancellation of said insurance on plaintiff's life after said sixty (60) days.

After reviewing the evidence in this case, we find no reason for ordering the policy cancelled except for the fact that the insured objects to its continuance. There appears to be no imminent danger to the appellee and no harm in allowing the corporation to continue carrying the insurance. The judgment below is, therefore, reversed, the complaint dismissed, and the costs of this appeal taxed to the appellee.

GODDARD and FRANKS, JJ., concur.