## EX PARTE Jorge Alberto PEREZ

### NO. 14–16–00332–CR

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion filed April 13, 2017

Tristan LeGrande, Houston, TX, for Appellant.

Jason Travis Bennyhoff, Richmond, TX, for State.

Panel consists of Justices Christopher, Jamison, and Wise.

## OPINION

Ken Wise, Justice

After twelve jurors and an alternate were empanelled and sworn, and jeopardy attached, the trial court recessed the trial. The court attempted to recall the jurors four months later with less than one day's notice. It appeared that two of the jurors had moved out of the county, and only five jurors actually showed up. The trial court declared a mistrial over appellant's objection. In this appeal from a denial of his application for a writ of habeas corpus, appellant contends that his retrial is barred by double jeopardy.

We hold that the State has failed to meet its heavy burden of demonstrating that the mistrial was a manifest necessity. The record does not reveal that it was simply impossible to continue with trial and that the trial court entertained every reasonable alternative to a mistrial. Thus, appellant's second prosecution for the same offense is barred by double jeopardy.

## I. BACKGROUND

### A. Recess for a Competency Evaluation

The jury in the trial was empaneled and sworn in September 2015. The trial court held a hearing on appellant's motion to suppress his confession outside the jury's presence. Appellant urged that his confession to stealing drugs from a CVS pharmacy was involuntary because he was having "flashbacks" to when he had been twice committed to a mental institution in 2005.

Before ruling on the motion, the trial court acknowledged reports stating that appellant had been found competent to stand trial in 2013, incompetent to stand trial in February 2015, and then "not meeting the criteria for inpatient or outpa-

tient commitment" in June 2015. The court took these reports into account for its findings on the motion to suppress. The court denied in part and granted in part the motion to suppress and then recessed for lunch.

After lunch, because the court had one competency evaluation saying that appellant was incompetent and one saying that appellant was competent, the court said that it sounded like there was a competency trial issue. *See generally* Tex. Code Crim. Proc. ch. 46B. The court remarked that no one had included the court in the discussion of competency. The court said, "Well I think we all had lots of things going and we just didn't get that done. It's not a matter of blame, there's nobody being harpooned here." The court suggested to the parties that there needed to be a competency trial because the court was "not ready to concede that there is a competent individual that we're dealing with."

Before deciding how the court would proceed on the competency issue, the court expressed its inclination to release the jury: "Now, first of all, I'm not really, at this point of a mind to keep this jury either. . . . So my inclination would be to release the jury." The State expressed concern that jeopardy had attached. The court responded, "They have been impaneled because they were sworn in, that's the trigger point. But this is not—this is not an error by the State or an error by the Defense." The State asked whether the court would be taking a recess and keeping the jury for a later date or releasing them. The court said it was inclined to release the jury. The State raised the possibility of a mistrial: "Perhaps there will be a mistrial at this point to retry the case."[1]

---

1. The State also said that it was not asking for

a competency trial, and defense counsel said

After the court and parties had an off-the-record discussion, the State explained that it had consulted with its appellate division. The State asked the trial court, instead of granting a mistrial, to inquire of the jurors whether they could come back for trial after a recess. The State said, "If they say they cannot, then at that point, we would ask the Court—well, the Court would declare a mistrial."[2]

The court then brought in the jury and told the jury that there was a legal procedure that needed to happen before the trial could resume, which could take as long as thirty days. The court told the jury that the trial would probably take a day and a half at most. The court asked, "Is there anyone who could not come back if we gave you, say, seven days' notice and be here for one or one and a half days?"

One juror said he might have travel plans for work. Three other jurors had travel plans in September or October. One juror said he would be starting a new job in Vancouver, Washington, on October 1.

Outside the jury's presence, defense counsel acknowledged that they could not expect the juror who was moving out of state to serve on the jury. But, counsel noted that they still had an alternate. The court said it would "leave them on call because we do have an alternate." The court expressed its concerns and the possibility of a mistrial:

> I—from a practical standpoint, I think we're going to have more problems by the time we call them back than even were enunciated yet. But I'm willing to do that in order to make certain we don't give away our jury too quickly. I can always do the mistrial based upon

things that occur after today, but at least we have inquired today.

Trial was set to resume on December 15, but the trial court granted appellant's request for a continuance to January 26, 2016, so appellant could obtain medical records from his commitment.

## B. Mistrial Declared

On January 26, the trial court told the parties that two of the jurors moved out of the county, and therefore could not qualify as jurors, so the court would be releasing the jury:

> THE COURT: [The State], come up; [Defense Counsel]. We have—we've lost our jury. Two of the people in the jury have moved out of the county; no longer live here. So they can't qualify as jurors.
>
> DEFENSE: Is a mistrial being declared, Your Honor?
>
> THE COURT: No. We'll pick another jury.
>
> DEFENSE: I want—I want the same jury back. I'm just doing my—as my—
>
> THE COURT: Your request to have the same jury back is overruled because I can't reconstruct a jury. It's not the fault of anyone involved in this proceeding. So it does not go against the prosecution. You don't get a free ride out of it.
>
> We're going to have another jury trial with a different jury. We even talked about this at the time that we—that we decided to wait and continue the case, and we recognized—everyone

he was not sure that a competency hearing or trial was necessary.

**2.** The parties also agreed that they would need to have a competency trial. And the trial

court reiterated that it was suggesting the issue of competency sua sponte, "not after any kind of error or caused by the State or by the Defense, for that matter."

recognized that there was some risk involved.

Anytime you have a jury, it's a dynamic situation. Some of them moved. And there's just things that nobody could have anything—we called them all. And some of them are outside waiting in the hall. I'm going to call them in and I'm going to release them. You have on the record your complaint about that.

DEFENSE: Yes, sir, Your Honor.

THE COURT: For whatever appellate purpose you think it might achieve, you have it. And I don't want to hear anything about it because we're done with that.

THE COURT: Are y'all ready to go to trial today?

The State announced ready but said it needed to "flush out the record."

The State asked the court how many jurors were left given that there was an alternate. The court said there were eleven. The State then asked defense counsel if he wanted twelve jurors:

THE STATE: Okay. I want to clarify with Defense counsel. You want to go with twelve, not with eleven; is that correct?

DEFENSE: Yes.

THE STATE: You wanted a full twelve; is that correct?

DEFENSE: That's correct.

The bailiff announced that only four jurors were outside. Defense counsel asked the court when the jurors were contacted:

DEFENSE: And, Your Honor, just so that we can have it on the record, when were they contacted?

THE COURT: Yesterday afternoon.

DEFENSE: (Nods.)

THE COURT: Or yesterday, sometime. I'm not sure if it was morning or afternoon. They called everybody on the list. They talked to everybody, and then reported back to me that we just couldn't get them together.

So, we'll just have to pick a new jury. I'll have a panel come up this morning. We'll start the selection process. We'll have a jury and get this thing done.

The State asked for more time to look up the law about whether there was a less drastic alternative to a mistrial. The trial court and the State discussed whether Article 36.29 of the Code of Criminal Procedure could require trial with eleven jurors and whether a juror would be disabled if not qualified.[3] And the trial court concluded that it could not "keep hold of" an out-of-county juror:

THE COURT: The problem is that when somebody moves out of the county, you lose your ability to keep hold of them. You can't get them in here to serve.

THE STATE: You can't attach them to come here because they're not here anymore.

THE COURT: Right. So, you know, is that a disability? I don't know if it's a disability. Certainly, they've become unable to serve.

3. See Tex. Code Crim. Proc. art. 36.29(a) (providing the general rule that "after the trial of any felony case begins and a juror dies or, as determined by the judge, becomes disabled from sitting at any time before the charge of the court is read to the jury, the remainder of the jury shall have the power to render the verdict"); *Hill v. State*, 90 S.W.3d 308, 315–16 (Tex. Crim. App. 2002) (holding that double jeopardy barred the second prosecution when one of the jurors in the first trial became disabled and the trial court declared a mistrial instead of proceeding with eleven jurors).

The trial court then asked defense counsel if he would be willing to go to trial with the four jurors who showed up. When defense counsel declined, the court formally declared a mistrial:

> THE COURT: So, I'm going to declare a mistrial with that jury. Since we have—the clerk's office has called and made every effort to try to get everyone here.
>
> It has been quite a—it seems like we stopped this in order to get a competency evaluation or something of that nature.
>
> DEFENSE: Yes, Your Honor.
>
> THE COURT: And that was a request by the Defense,[4] which I thought was appropriate for us to go ahead and do. But in doing it, we ran a risk that we would have a problem getting a jury back together and that's exactly what happened.
>
> We've ended up with a horrific run where we have lost a couple of jurors who moved out of the county. We've got people who are no longer able to be available, for one reason or another.
>
> We've got—we're down to four outside, when we started off with twelve—thirteen—twelve and an alternate. I call that at least a good faith effort to keep our jury together that just has turned into sand in our hands.
>
> So, now we can sit and worry about this or we can get it tried. My inclination is to get it tried.

The trial court brought in the jurors, counted five of them, and excused them.

---

4. Defense counsel later told the trial court that it was "the Court's own motion for the

## C. Hearing and Denial of Writ of Habeas Corpus

Appellant filed a pretrial application for a writ of habeas corpus, urging that his retrial was barred by double jeopardy. The trial court held a hearing at which several court employees testified.

A district clerk, Christina Davila, testified that she contacted half of the jurors. She called them the day before they were supposed to show up. She did not recall who she contacted and did not keep any notes. On direct examination by defense counsel, Davila testified that one of the jurors said they would not be able to appear the following day because they were not in the county:

> Q: Do you recall when you made these phone calls anyone telling you that they would not be able to appear the following day?
>
> A: Yes.
>
> Q: Tell me what you remember.
>
> A: I don't remember specific reasons, just that they wouldn't be able to make it. I don't know if it was work related or not.
>
> Q: Okay. And the reason that I ask is that some reasons are better than others, and that's what I'm trying to get at. Do you recall anyone telling you specifically that they could not appear because they were out of the county?
>
> A: Yes.
>
> Q: Okay. And how many persons was that?
>
> A: I had one person.
>
> Q: One person. Do you recall that person's name?
>
> A: I do not.
>
> . . . .

last competency evaluation, not the Defense." The trial court said, "I'll take the blame."

Q: Do you recall someone named—do you recall a jury member telling you that he had moved to Vancouver?

A: No, not that I recall.

Q: Okay. Do you recall any of the other reasons that were given?

A: No.

On cross-examination by the State, Davila testified that one of the jurors said he would be unavailable, but Davila did not recall the reason for the unavailability:

Q: One of them, you recall told you that—that he would be unavailable; is that correct?

A: Yes.

Q: And do you recall the reason why he said he was unavailable?

A: I don't.

She was not aware of the jurors being contacted any time other than the day before trial.

A jury clerk in the District Clerk's Office, Leticia Navarro, testified that she contacted half of the jurors. She could not remember what day it was or when she told them to return for service. She testified on direct examination that one man said he could not return for service:

Q: When you contacted the jury members, do you recall if anyone told you they could not return for service?

A: I recall one gentleman, I don't remember his name. I believe he moved out—I don't remember if it was out of county or out of state.

Navarro could not recall anyone giving another reason for not returning for service, though she "didn't actually speak to everyone" because she "may have left messages":

Q: Do you recall anyone giving you a reason other than moving outside the county?

A: No, sir.

Q: Is it your testimony that everyone else you spoke with said they would be returning?

A: If I recall correctly, I didn't actually speak to everyone. I may have left messages.

Navarro testified that this was the only time she contacted jurors in this case.

The trial court denied habeas relief and made some findings and conclusions on the record:[5]

The Court finds that—that all practical matters that could have been done to find out where the jurors were and see if they could be attached were done. You cannot attach a person whose whereabouts you do not know. To say that you could is absolutely disingenuous at best and laughable at worse.

. . . .

And when we tried to re-amass these— the members of the jury were unable to do so because they weren't there. We asked everyone who called them and we've gotten the best information that there is available and it all shows that there were efforts made and expended— time expended in order to try to get them back.

. . . .

There was never anything that occurred in this trial that the State did that

**5.** *See Ex parte Peterson*, 117 S.W.3d 804, 819 n.68 (Tex. Crim. App. 2003) ("In any habeas corpus hearing, a trial court may enter oral or written findings of fact."), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007); *Sandifer v. State*, 233 S.W.3d 1, 3–4 (Tex. App.–Houston [1st Dist.] 2007, no pet.) (reviewing trial court's oral findings and deferring to those findings because they were based on an evaluation of credibility and demeanor).

brought on the circumstances to inquire into the competency of the defendant nor has there been anything that the State has done to interfere with or preclude the efforts to attempt to—to bring the jurors back in. I find absolutely no responsibility whatsoever on the State for this matter. It is a practical matter that everyone has to deal with from time-to-time.

The trial court signed a written order denying the application. Appellant appealed.

## II. ANALYSIS

Appellant contends that the trial court erred by denying habeas relief because there was no manifest necessity for a mistrial and the court did not adequately consider and rule out less drastic alternatives. Specifically, appellant argues that (1) the jurors were not given reasonable notice to return for service; (2) the trial court could have granted a short continuance to recall jurors with adequate notice; (3) the court could have attached a juror outside of the county; and (4) the jurors were not disabled or incapable of serving.

The State contends that the trial court considered less drastic alternatives as follows: (1) "delaying the case at the outset"; (2) "proceeding with a disqualified juror"; and (3) "proceeding with eleven jurors." Relevant to the second alternative, the State contends that appellant "never actually stated he would waive [the out-of-county jurors'] disqualification," so "it cannot be said that proceeding with either of the disqualified jurors was an available option." Relevant to the third alternative, the State contends that two jurors were disqualified and unavailable, which resulted in only eleven jurors being available. The State contends that the trial court had no alternative but to grant a mistrial because appellant refused to proceed with eleven jurors. Moreover, the State contends that applying double jeopardy would be absurd because appellant contributed to the conditions leading to the mistrial by acceding to the competency evaluation and moving for a continuance.

## A. Standard of Review

Generally, we review a trial court's decision on an application for a writ of habeas corpus under an abuse of discretion standard of review. *Ex parte Sudhakar*, 406 S.W.3d 699, 701 (Tex. App.–Houston [14th Dist.] 2013, pet. ref'd) (citing *Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex. Crim. App. 2011)). We review the evidence in the light most favorable to the trial court's ruling. *See Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). And we defer to the trial court's implied factual findings that are supported by the record. *See Ex parte Wheeler*, 203 S.W.3d 317, 325–26 (Tex. Crim. App. 2006).

## B. Legal Principles for Mistrials and Manifest Necessity

A criminal defendant may not be put in jeopardy by the State twice for the same offense. *Pierson v. State*, 426 S.W.3d 763, 769 (Tex. Crim. App. 2014). This right is guaranteed by the Due Process Clause of the Fifth Amendment, extended to the States through the Fourteenth Amendment. *See id.*; *Ex parte Garza*, 337 S.W.3d 903, 909 (Tex. Crim. App. 2011).

A defendant is placed in jeopardy when the jury is empaneled and sworn. *Pierson*, 426 S.W.3d at 769. Because jeopardy attaches at this point, the Constitution "confers upon a criminal defendant a 'valued right to have his trial completed by a particular tribunal.'" *Ex parte Garza*, 337 S.W.3d at 909 (quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949)); *see also Pierson*, 426 S.W.3d at 769. Thus, when a trial court declares a mistrial against the defendant's

wishes, usually further prosecution for the same offense is barred. *Ex parte Garza,* 337 S.W.3d at 909.

There are exceptions to this general rule. *See Pierson,* 426 S.W.3d at 769–70. Relevant here, the prosecution is not barred if there was a "manifest necessity" to grant the mistrial. *Id.* "Manifest necessity" is a "high degree" of necessity. *Id.* at 770. "[T]he trial court's discretion to declare a mistrial based on manifest necessity is limited to, and must be justified by, extraordinary circumstances." *Ex parte Garza,* 337 S.W.3d at 909; *see also Ex parte Fierro,* 79 S.W.3d 54, 56 (Tex. Crim. App. 2002) ("Manifest necessity is limited to very extraordinary and striking circumstances."). Manifest necessity exists for declaring a mistrial "when it is simply impossible to continue with trial." *Ex parte Garza,* 337 S.W.3d at 909; *see Hill v. State,* 90 S.W.3d 308, 313 (Tex. Crim. App. 2002).

The defendant and State have shifting burdens. "Once the defendant shows he is being tried for the same offense after declaration of a mistrial to which he objected, a heavy burden shifts to the State to justify the trial court's declaration of a mistrial." *Ex parte Garza,* 337 S.W.3d at 909. Thus, it is the State's burden to demonstrate the manifest necessity for a mistrial. *Pierson,* 426 S.W.3d at 770; *Ex parte Garza,* 337 S.W.3d at 909.

A trial court abuses its discretion "whenever the trial court declares a mistrial without first considering the availability of less drastic alternatives and reasonably ruling them out." *Ex parte Garza,* 337 S.W.3d at 909. The trial court must entertain "every reasonable alternative" to a mistrial. *Id.* at 916; *see also Brown v. State,* 907 S.W.2d 835, 840 n.5 (Tex. Crim. App. 1995) ("[T]he determination of whether there is manifest necessity for a mistrial

entails consideration of *all* the apparent less drastic alternatives before granting a mistrial.").

A trial court may not simply make a "perfunctory recitation of the alternatives before granting a mistrial." *Ex parte Fierro,* 79 S.W.3d at 56 (quoting *Brown,* 907 S.W.2d at 840). The court must "carefully and deliberately consider which of all the alternatives best balances the defendant's interest in having his trial concluded in a single proceeding with society's interest in fair trials designated to end in just judgments." *Id.* (quotations omitted). But, the trial court "need not expressly articulate the basis for the mistrial on the record in order to justify it to a reviewing court, so long as manifest necessity is apparent from the record." *Ex parte Garza,* 337 S.W.3d at 909–10.

## C. Relevant Case Law Concerning Jurors

The issue of manifest necessity has arisen in the context of unqualified and absent jurors. In both of these situations, courts have held that a less drastic alternative to a mistrial includes consideration of whether the parties consent to a trial with fewer than the full complement of jurors. For an unqualified juror, a less drastic alternative includes allowing the juror to remain on the jury. And for an absent juror, less drastic alternatives include continuing the trial until a later date or issuing a writ of attachment.

As this case involves unqualified jurors and absent jurors, we review the cases involving both.

### 1. Unqualified Jurors

In *Ex parte Fierro,* 79 S.W.3d 54 (Tex. Crim. App. 2002), the State learned, after jeopardy attached, that one of the jurors was the defendant's cousin. *Id.* at 55. The State challenged the juror for cause pursu-

ant to Article 35.16(b)(2), which allows a challenge if the juror is related to the defendant within the third degree of consanguinity. *Id.*; *see also* Tex. Code Crim. Proc. art. 35.16(b)(2). The trial court granted the State's challenge, excused the juror, and declared a mistrial. *Ex parte Fierro*, 79 S.W.3d at 55. When it declared a mistrial, the trial court announced that it could not proceed to a verdict with eleven jurors. *Id.*

The defendant never argued, even at the Court of Criminal Appeals, that cousins like he and the juror were not related within the third degree of consanguinity. *See id.* at 59 (Holcomb, J., dissenting); Brief for Appellant, *Ex parte Fierro*, 79 S.W.3d 54 (Tex. Crim. App. 2002) (No. 1880-00), 2001 WL 34386349. But cousins are not, in fact, so related. *Ex parte Fierro*, 79 S.W.3d at 57 (majority op.). The Court of Criminal Appeals noted that the disqualification was erroneous and then proceeded to address the issue of manifest necessity. *See id.*

The court held that a mistrial was not necessary, "manifestly or otherwise," because the trial court did not consider two less drastic alternatives. *See id.* First, the trial court failed to "determine if the parties would be willing to proceed with fewer than twelve jurors." *Id.* (citing Tex. Gov't Code § 62.201).[6] Another less drastic alternative to a mistrial "would have been allowing that juror to serve on the jury." *Id.* Retrial was barred by double jeopardy. *Id.*

 Relying on *Ex Parte Fierro*, a divided Texarkana Court of Appeals held that manifest necessity was not shown for a mistrial even though the juror was, in fact, "subject to challenge for cause"—in other words, unqualified.[7] *See Ex parte Hunter*, 256 S.W.3d 900, 908–09 (Tex. App.–Texarkana 2008), *pet. dism'd*, 297 S.W.3d 292 (Tex. Crim. App. 2009). The trial court learned that one of the jurors had sat on a grand jury that returned an indictment against the defendant, making the juror challengeable for cause. *Id.* at 906 (citing Tex. Code Crim. Proc. art. 35.16(a)(7)). Neither party challenged the

---

**6.** Under Section 62.201 of the Government Code, "The jury in a district court is composed of 12 persons, except that the parties may agree to try a particular case with fewer than 12 jurors." Tex. Gov't Code § 62.201.

**7.** Before considering this case, we must note the distinction between absolutely disqualified jurors and unqualified jurors. An absolutely disqualified juror is one whom the parties may not consent to having on the jury. *See Nelson v. State*, 129 S.W.3d 108, 111 (Tex. Crim. App. 2004). A juror is absolutely disqualified for one of only three statutory reasons. *See id.* at 108–09 (citing Tex. Code Crim. Proc. arts. 35.16(a), 35.19). A trial court has authority to sua sponte excuse an absolutely disqualified juror. *See Butler v. State*, 830 S.W.2d 125, 130 (Tex. Crim. App. 1992) (noting that a trial court "should not *sua sponte* excuse a potential juror except on grounds of absolute disqualification").

An unqualified juror is one who is subject to disqualification by a challenge for cause under any of the non-absolute reasons. *See id.* at 130 n.9. These jurors are "presumptively qualified." *Id.* A trial court may not sua sponte excuse a juror on the basis that the juror is unqualified. *See id.* at 130; *see also Goodman v. State*, 701 S.W.2d 850, 856 (Tex. Crim. App. 1985) ("It is well settled that a trial judge should not on its own motion excuse a prospective juror for cause unless the juror is absolutely disqualified from serving on a jury.").

A juror is unqualified if he or she does not reside in the county of the district court. *See Mayo v. State*, 4 S.W.3d 9, 11 (Tex. Crim. App. 1999) (holding that "a venireperson who does not live in the county is subject to challenge"); *see also* Tex. Code Crim. Proc. art. 35.16(a)(1); Tex. Gov't Code § 62.102. A juror's failure to reside in the county of the district court is not an absolute disqualification. *See* Tex. Code Crim. Proc. arts. 35.16(a), 35.19.

juror for cause, but the trial court sua sponte announced that the juror was disqualified from participating in the case. *See id.* at 905. The trial court considered a less drastic alternative to mistrial: proceeding with eleven jurors if the defendant consented. *See id.* at 905–06. But the defendant insisted on his right to a jury of twelve. *See id.* at 906. At that point, the trial court discharged all of the jurors and declared a mistrial. *Id.* at 906 & n.7.

The court of appeals noted that the problem juror was "subject to challenge for cause," but "neither party challenged her, objected to her dismissal, or suggested to the trial court that the juror could be kept." *Id.* at 908. The court of appeals analogized to *Ex parte Fierro*: "While *Fierro* dealt with a challenge for cause which was erroneously granted, the case before us is an erroneous, sua sponte dismissal of a juror who was challengeable for cause." *Id.* at 907. The court reasoned that *Ex parte Fierro* required reversal: "[S]ince the manifest-necessity threshold requires the trial court to explore all less drastic alternatives before declaring a mistrial, and the trial court did not consider the less drastic alternative of keeping the problem juror and continuing the trial with the then-constituted jury, manifest necessity did not require the mistrial." *Id.* at 908. Retrial was barred by double jeopardy. *Id.* at 909.[8]

Here, the State relies on *Tinney v. State*, 773 S.W.2d 364, 366 (Tex. App.–Fort Worth 1989, pet. ref'd), to argue that once appellant insisted on having twelve jurors, the trial court had no option but to declare a mistrial. The juror in *Tinney*, however, was absolutely disqualified because the juror was under felony indictment. *See id.* (citing Tex. Code Crim. Proc. arts. 35.16, 35.19). Thus, the trial court had authority to sua sponte remove the juror from the panel, and the parties could not consent to having the juror on the panel. *See* Tex. Code Crim. Proc. arts. 35.16, 35.19; *Butler v. State*, 830 S.W.2d 125, 130 (Tex. Crim. App. 1992); *see also supra* note 7. The only available option in *Tinney*, therefore, was proceeding with fewer than twelve jurors if the defendant consented. When the defendant refused, manifest necessity existed for a mistrial: continuation of the trial was simply impossible. *See Tinney*, 773 S.W.2d at 366. Retrial was not barred by double jeopardy. *See id.*

The State also cites *Strickland v. State*, 741 S.W.2d 551 (Tex. App.–Dallas 1987, no pet.), but *Strickland* is directly contrary to the State's position. In *Strickland*, a juror moved out of the county after jeopardy attached. *Id.* at 552. The trial court granted a mistrial on its own motion. *Id.* The Dallas Court of Appeals held that manifest necessity did not exist for the mistrial because the trial court failed to consider less drastic alternatives. *Id.* at 553. The court of appeals noted that the trial court could have continued with eleven jurors, regardless of the defendant's consent, if the discharged juror was "disabled" under Article 36.29 of the Code of Criminal Procedure. *Id.*[9] And, when a juror is not dis-

8. The court of appeals reached this result even though it believed that "the trial court was not consciously aware that it had the option of keeping the problem juror and thus continuing with Hunter's trial." *Ex parte Hunter*, 256 S.W.3d at 909 (footnote omitted).

9. No doubt, the juror was not disabled based on the fact that the juror moved out of the county. *See Hill v. State*, 90 S.W.3d 308, 315

(Tex. Crim. App. 2002) (noting that a juror who was not a United States citizen was not "disabled" within the meaning of the statute; rather, disability involves physical illness, mental condition, or emotional state which hinders the juror's ability to perform their duties). The State does not suggest on appeal, as it did at trial, that an out-of-county juror might be disabled. Thus, we do not belabor the issue.

abled, the trial court "should advise the accused that the trial will continue with twelve jurors unless the accused agrees to continue with eleven, or asks for a mistrial." *Id.*

■ *Strickland*, therefore, shows that when the trial court discovers a juror has moved outside the county, there are at least three options: (1) grant a mistrial if the defendant consents, (2) continue with eleven jurors if the defendant consents, or (3) continue the trial with all twelve jurors, including the unqualified one. *See id.* Because proceeding to verdict with the out-of-county juror was a less drastic alternative to a mistrial, double jeopardy barred the defendant's retrial. *See id.*[10]

Having reviewed cases concerning unqualified and absolutely disqualified jurors, we now consider cases with absent jurors.

### 2. *Absent Jurors*

In *Ex parte Garza*, 337 S.W.3d 903 (Tex. Crim. App. 2011), a misdemeanor trial with six jurors began on a Monday. *Id.* at 905–06. On Tuesday, the trial court learned that a juror was hospitalized for a cardiac event. *Id.* at 906. The court recessed the case for two days. *Id.* On Thursday, the trial court learned that the juror was expected to be available for trial during the following week, but another juror was unavailable for several days that week, as

well. *See id.* at 906–07. The bailiff reported that two of the jurors agreed to return for jury duty the following week although they were somewhat reluctant. *Id.* And the bailiff had left messages for two other jurors but had not yet heard back from them. *Id.* at 907. The trial court noted that it told the jury the trial would take no more than two days. *Id.* The court said it was uncertain whether the hospitalized juror would be able to return, and it was uncertain about when the traveling juror would be coming back to town. *Id.* Expressing concern about holding the jury through the following week, the trial court declared a mistrial based on manifest necessity. *Id.*

The Court of Criminal Appeals held that double jeopardy barred the defendant's retrial because the State failed to meet its heavy burden of proving manifest necessity for a mistrial. *See id.* at 916–17. The court reasoned that the trial court failed to entertain every reasonable alternative to a mistrial. *Id.* at 916. Two alternatives included (1) "exploring the option to wait a week" and (2) proceeding with a five-member jury, given that the defendant was willing to do so. *Id.* at 911.

Regarding the option of granting a week's continuance, the court squarely placed the burden of proof on the State to

---

**10.** *Strickland* relied on a non-double-jeopardy case: *Carrillo v. State*, 597 S.W.2d 769 (Tex. Crim. App. 1980). *Carrillo* found error when the trial court excused a juror after the juror informed the court that the defendant's sister had been one of the juror's pupils, and "it would affect her ability as a juror." *Id.* The defendant requested a mistrial, but the trial court denied it and proceeded to verdict with eleven jurors. *Id.* at 769–70. The Court of Criminal Appeals held that the juror was not disabled, so an eleven-member jury was not required by Article 36.29. *See id.* at 770–71. The court explained the proper procedure in such a situation may include allowing an unqualified juror to remain on the jury:

> We conclude that the trial court before discharging the juror should have advised the appellant he would continue the trial without discharging the juror unless the appellant either agreed to continue the trial with eleven jurors or asked for a mistrial. The court should then, depending on the appellant's election, have granted a mistrial or continued with eleven jurors. If the appellant refused to make an election the court should not have discharged the juror, but continued the trial without discharging the juror.
>
> *Id.* at 771.

show the inability of a continuance to be a less drastic alternative to mistrial:

> To proceed with the original tribunal would have necessitated a week's continuance. Moreover, the record does not affirmatively establish that the five remaining jurors would be available on that date. But the record does not establish that the five jurors would not have been available on August 23rd. Two of the jurors told the bailiff that they could be available the following week, and a third indicated only that he could not be available on August 21st and 22nd—*not* that he was unavailable thereafter. The record does not show that the other two jurors, who had not yet responded to the bailiff's messages, would be unavailable. The burden of proof is on the State to demonstrate manifest necessity, and it is "a heavy one." The State has not established that the trial court reasonably ruled out the still-extant possibility that a one-week continuance could secure the appellant's right to obtain a verdict from the tribunal originally selected to try him.
>
> . . . .
>
> The need for a continuance does not, by itself, justify a mistrial, and it had not been determined—at least not by that point in time—that a continuance of more than a week was necessary.

*Id.* at 916 (footnote omitted). The Court of Criminal Appeals was unable to conclude that "the State has satisfied its 'heavy burden' to show the 'high degree' of necessity the Fifth and Fourteenth Amendments require to justify subjecting the appellant to a second trial." *Id.* at 917.

Regarding the option of proceeding with only five jurors, the Court of Criminal Appeals acknowledged that it was "not clear that the trial court ever considered whether to consent to trying the case with only five jurors." *Id.* at 918. Nonetheless, a trial court "is obliged to consider every less drastic alternative." *Id.* at 917. This requirement applies even when "the record is clear that neither the judge nor counsel was aware of or even considered the option." *Id.* (quoting *Commonwealth v. Nicoll*, 452 Mass. 816, 897 N.E.2d 1226, 1231 (2008)).

In *Ex parte Little*, 887 S.W.2d 62 (Tex. Crim. App. 1994), the Court of Criminal Appeals addressed the issue of a missing juror. One morning during trial, a juror failed to appear. *Id.* at 63. After being unable to locate the juror and waiting three hours, the trial court declared a mistrial. *See id.* at 63–64. The Court of Criminal Appeals held that the trial court failed to consider at least two less drastic alternatives: (1) a continuance and (2) issuing a writ of attachment. *See id.* at 67.

The court held that a continuance was "the most available less drastic alternative." *Id.* The court reasoned, "A defendant having a right to a jury has a concurrent right to a continuance until the full jury is in attendance." *Id.* The court acknowledged that "the prolonged absence of a juror might give rise to manifest necessity" under particular circumstances. *Id.* But the facts in *Ex parte Little* "did not provide the 'very extraordinary and striking circumstances' to support the trial judge's decision." *Id.* (quoting *Downum v. United States*, 372 U.S. 734, 738, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963)). Retrial was barred by double jeopardy. *Id.*

Finally, in *Ex parte Alexander*, 141 S.W.3d 798 (Tex. App.–Beaumont 2004, pet. ref'd) (per curiam), a jury was selected and sworn, but the trial court continued the proceedings for several days due to scheduling problems. *Id.* at 799–800. One of the jurors told the court that she would not return for the first day of trial because she would be out of town. *Id.* at 801. The State consented to proceed with eleven

jurors, but the defendant refused. *Id.* at 800. The trial court considered several alternatives: issuing a writ of attachment, or continuing the case. *Id.* at 800–01. But the trial court rejected those alternatives and declared a mistrial instead. *See id.*

The Beaumont Court of Appeals held that a short continuance was a less drastic alternative to a mistrial. *Id.* at 801. Thus, retrial was barred by double jeopardy. *Id.* at 801–02.

We now consider whether manifest necessity required a mistrial in this case.

## D. No Manifest Necessity to Declare a Mistrial

 We hold that the State failed to meet its heavy burden of showing manifest necessity for the mistrial. At the outset, we agree with the State that proceeding with fewer than twelve jurors was not possible in this case. Appellant did not consent to proceed with less than twelve jurors, and none of the jurors were disabled. *See Hill*, 90 S.W.3d at 315; *Tinney*, 773 S.W.2d at 366. And, appellant conceded that proceeding with the juror who moved outside the state was not an available option. But there was an alternate juror, so the trial could have proceeded with twelve jurors if the remaining jurors—including one who moved outside the county—could have served. Thus, we must consider whether the State has shown that the out-of-county juror was disqualified or unavailable as part of the analysis of whether there was a less drastic alternative to a mistrial.

### 1. Disqualification

 On appeal, the State contends that the out-of-county juror was disqualified. But at trial, the State did not challenge the juror for cause. Instead, the trial court informed the parties that the two jurors who moved outside the county "can't qualify as jurors." To the extent the trial court

granted a mistrial because the court sua sponte disqualified the out-of-county juror, the trial court erred. *See, e.g., Goodman*, 701 S.W.2d at 856; *Ex parte Hunter*, 256 S.W.3d at 906. An out-of-county juror is not absolutely disqualified from service. *See Mayo v. State*, 4 S.W.3d 9, 11 (Tex. Crim. App. 1999); *see also* Tex. Code Crim. Proc. arts. 35.16(a), 35.19. *See generally supra* note 7. Thus, a less drastic alternative to a mistrial would have been to inquire of the parties whether they would be willing to proceed with the out-of-county juror. *See Ex parte Fierro*, 79 S.W.3d at 57; *Ex parte Hunter*, 256 S.W.3d at 909; *Strickland*, 741 S.W.2d at 553.

The parties did not expressly inform the trial court that they could have proceeded with an out-of-county juror. But jeopardy applies even if the trial court was not consciously aware of the less drastic alternative of keeping the unqualified juror on the panel. *See Ex parte Hunter*, 256 S.W.3d at 909; *see also Ex parte Garza*, 337 S.W.3d at 917 (noting that retrial may be barred even if the trial court and counsel were not aware of, and did not consider, the less drastic alternative).

The State faults appellant for not stating that he would waive the juror's disqualification, and thus, "it cannot be said that proceeding with either of the disqualified jurors was an available option." However, a challenge to a juror based on a non-absolute disqualification, such as county residence, is a forfeitable right, not a waivable right. *See Webb v. State*, 232 S.W.3d 109, 112 & n.1 (Tex. Crim. App. 2007) (noting that although many cases suggest "a challenge for cause is *waived* if not used, it is more accurate to say that the right is *forfeited* by failure to request the challenge" (citing *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993))); *Mayo*, 4 S.W.3d at 11–12 (holding that a

challenge for cause based on county residence is waived if not made; the Legislature did not intend for a defendant to waive the county-residence requirement only "by knowingly accepting a disqualified juror"). Thus, all appellant had to do to forfeit a challenge to the out-of-county juror was remain silent. But instead, after the trial court informed the parties that two jurors moved out of the county, appellant insisted, "I want the same jury back." Thus, any implied finding that appellant refused the out-of-county juror is not supported by the record.

### 2. Availability

■ Next, we consider the State's argument that the out-of-county juror was "unavailable" and "had indicated that they would no longer be able to appear for the trial." We do not find support for the State's contention in the record. From defense counsel's questioning of Davila at the habeas hearing, the trial court could have found that a juror "would not be able to appear *the following day* ... because they were out of the county." Notwithstanding the fact that counsel did not ask whether the juror had *moved* out of the county, but only that the juror would be "out of the county" on "the following day," we cannot glean from this record a rational inference that the out-of-county juror was claiming to be unavailable for trial at any future date. Rather, the juror—like six other jurors—may have been unable to appear on less than twenty-four hours' notice. A juror's residing outside the county does not necessarily make them unavailable to serve. *Cf. Matthias v. State*, 695 S.W.2d 736, 739–41 (Tex. App.–Houston [14th Dist.] 1985, pet. ref'd) (affirming conviction when the trial court allowed an out-of-county juror to remain on the jury over

the defendant's request for a mistrial; the defendant waived any challenge to the juror based on her residency by not making an inquiry during voir dire).

The State adduced no evidence about which county the juror moved to, such that the trial court might be able to rationally infer that distance would preclude service. And the State adduced no evidence as to whether the out-of-county juror was actually one of the eight jurors who failed to appear. Because the heavy burden of demonstrating manifest necessity is on the State, the absence of evidence about whether the out-of-county juror could be available upon reasonable notice weighs against the State. *See Ex parte Garza*, 337 S.W.3d at 916 (holding that the State failed to meet its burden when the record failed to show that the jurors would, or would not, be available after a week's continuance).

■ The State has not established that the trial court reasonably ruled out the possibility of continuing the case so the jurors could be given adequate notice of the trial.[11] After a delay in the case of more than four months, the trial court should have considered granting another short continuance upon learning of the inadequacy of the notice provided to the jurors. The trial court abused its discretion by failing to consider this less drastic alternative to a mistrial. *See Ex parte Garza*, 337 S.W.3d at 916; *Ex parte Little*, 887 S.W.2d at 67; *Ex parte Alexander*, 141 S.W.3d at 801.

### 3. Less Drastic Alternatives to Mistrial

In sum, we hold that the State failed to satisfy its heavy burden of showing mani-

---

11. The State has not argued that one day's notice, following a lengthy break in proceedings, was reasonable or adequate. Indeed, be-

cause at least six jurors failed to appear with no explanation or excuse, the notice proved inadequate.

fest necessity for a mistrial when the trial court did not reasonably rule out (1) allowing the out-of-county juror to serve on the jury and (2) continuing the case with reasonable notice to the jurors. *See Ex parte Garza*, 337 S.W.3d at 916–17 (one-week continuance despite uncertainty about whether jurors ultimately would be available); *Ex parte Fierro*, 79 S.W.3d at 57 (allowing challenged juror to serve); *Ex parte Little*, 887 S.W.2d at 67 (continuance); *Ex parte Hunter*, 256 S.W.3d at 909 (allowing unqualified juror to serve); *Ex parte Alexander*, 141 S.W.3d at 801 (continuance); *Strickland*, 741 S.W.2d at 553 (allowing out-of-county juror to serve).[12]

Because reasonable, less drastic alternatives were available at the time the trial court declared a mistrial, the record does not support a finding that it was impossible to continue with trial. *See Ex parte Garza*, 337 S.W.3d at 909.

### E. No Absurd Result

 The State contends that applying double jeopardy would be an absurd and unintended result because appellant contributed to the mistrial by acceding to the competency evaluation and moving for a continuance. The State cites no authority for this contention.

Nothing in the record indicates that appellant's request for a three-week continuance, after the trial court had reset trial for more than three months, contributed to a situation requiring a mistrial. The record shows that the trial court raised the issue of appellant's competency on its own motion. It was the State, not appellant, who asked the trial court to question the jurors about whether they would be able to return after a recess.

The State contends that competency evaluations "necessarily delay jury trials." However, halting the proceedings in this manner was unnecessary under the Code of Criminal Procedure. The trial court could have delayed the competency evaluation until after the jury returned its verdict:

> If the issue of the defendant's incompetency to stand trial is raised after the trial on the merits begins, the court may determine the issue at any time before the sentence is pronounced. If the determination is delayed until after the return of a verdict, the court shall make the determination as soon as reasonably possible after the return. If a verdict of not guilty is returned, the court may not determine the issue of incompetency.

Tex. Code Crim. Proc. art. 46B.005(d); *see Moore v. State*, 999 S.W.2d 385, 394 (Tex. Crim. App. 1999) (noting that when the issue of competency is raised at trial, the predecessor statute did "not necessarily require a halting of proceedings," but rather, trial courts may "set the issue for hearing at any time prior to the sentencing of the defendant").

Thus, the trial court could have proceeded to try this one- or two-day case to a verdict with the jury that the parties chose, and then gone forward with any competency proceedings after a guilty verdict. *See Parker v. State*, 667 S.W.2d 185, 187 (Tex. App.–Texarkana 1983, pet. ref'd) (noting that when the defense raised the

---

12. Further, we note that attachment is usually an option for missing jurors and a less drastic alternative to mistrial. *See Ex parte Little*, 887 S.W.2d at 67 (citing Tex. Code Crim. Proc. art. 35.01). But we need not address the argument that the State made to the trial court— that the court could not attach an out-of-county juror—because a continuance with more than one day's notice was a less drastic alternative to the mistrial. There was also nothing in the record to indicate that the out-of-county juror would refuse to return for trial.

issue of competency during trial, the court "declined to abate the trial but held a competency hearing, before a separate jury, after a verdict of guilty was returned but before sentencing"); *see also Garner v. State*, No. 09-09-00179-CR, 2010 WL 4514098, at *2 (Tex. App.–Beaumont Nov. 10, 2010, no pet.) (mem. op., not designated for publication) (finding no error when the issue of competency was raised after the jury was empaneled and the trial court held the competency trial thirty days after the guilty verdict); *Lawrence v. State*, No. 05-00-01288-CR, 2001 WL 995423, at *1–2 (Tex. App.–Dallas Aug. 31, 2001, no pet.) (not designated for publication) (finding no error when the trial court refused to halt the trial, dismiss the jury, or grant a continuance when the issue of competency arose during trial). We do not think appellant's acceding to the procedure suggested by the State creates an absurd or unintended result.

Appellant's retrial is barred by double jeopardy, and appellant's sole issue is sustained.

### III. Conclusion

Having concluded that the trial court erred by denying appellant's application for a writ of habeas corpus, we reverse the trial court's order. The case is remanded to the trial court with instructions to enter an order discharging appellant and barring any prosecution for the same offense. *See Ex parte Little*, 887 S.W.2d at 67–68.